IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-96

 No. 449A20

 Filed 27 August 2021

 IN THE MATTER OF: J.E.H., J.I.H., K.T.B., Q.D.B., I.T.B.

 Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 6

 August 2020 by Judge William F. Helms III in District Court, Union County. This

 matter was calendared for argument in the Supreme Court on 21 June 2021 but

 determined on the record and briefs without oral argument pursuant to Rule 30(f) of

 the North Carolina Rules of Appellate Procedure.

 Perry, Bundy, Plyler & Long, LLP, by Ashley J. McBride, for petitioner-
 appellee Union County Division of Social Services.

 No brief for appellee Guardian ad Litem.

 Richard Croutharmel for respondent-appellant mother.

 EARLS, Justice.

¶1 Respondent-mother appeals from the trial court’s order terminating her

 parental rights to J.E.H. (Jerry), J.I.H. (Jimmy), K.T.B. (Kenny), Q.D.B. (Quentin),

 and I.T.B. (Iris).1 Counsel for respondent-mother has filed a no-merit brief under Rule

 3.1(e) of the North Carolina Rules of Appellate Procedure. We conclude the issues

 1 Pseudonyms used in this opinion to protect the juveniles’ identities and for ease of

 reading.
 IN RE J.E.H., J.I.H., K.T.B., Q.D.B., I.T.B.

 2021-NCSC-96

 Opinion of the Court

 identified by counsel as arguably supporting the appeal are meritless and therefore

 affirm the trial court’s order.

¶2 On 19 June 2018, the Union County Division of Social Services (DSS) filed

 juvenile petitions alleging that Jerry and Jimmy, who are twins, were neglected and

 dependent juveniles. The petitions alleged that on 17 June 2018, respondent-mother

 took Jimmy to the emergency department and he was admitted to the hospital, where

 he was diagnosed with failure to thrive. The petition noted that hospital employees

 were concerned about respondent-mother’s ability to care for the twins. The petition

 further noted earlier reports to DSS that respondent-mother received no prenatal

 care while pregnant with the twins, who were born prematurely; she was diagnosed

 with postpartum depression soon after their birth; and she did not have adequate

 supplies such as diapers, formula, and clothing for the twins. The petition alleged

 DSS supplied the children with formula and diapers, but respondent-mother

 continued to fail to provide those items. Later juvenile petitions concerning the other

 children noted that a social worker reportedly observed the children being fed

 Carnation evaporated milk instead of formula.

¶3 On 18 June 2018, a Child and Family Team Meeting was held, and respondent-

 mother indicated she was unable to care for the children.2 She consented to the

 2 The narratives attached to the juvenile petitions for Jerry and Jimmy refer to the

 neglect and dependent status of three other children of respondent-mother, none of whom are
 the subject of this appeal.
 IN RE J.E.H., J.I.H., K.T.B., Q.D.B., I.T.B.

 2021-NCSC-96

 Opinion of the Court

 children’s placement with family or in foster care. DSS obtained nonsecure custody

 of Jerry and Jimmy on 19 June 2018. Following Jimmy’s discharge from the hospital,

 he and Jerry were placed in a licensed foster home.

¶4 On 11 July 2018, respondent-mother entered into a case plan to facilitate

 reunification with Jerry and Jimmy, which identified her needs in the areas of

 employment, housing and basic needs, emotional and mental health, and parenting

 and life skills. On 30 July 2018, respondent-mother entered into an In-Home Service

 Agreement to address her needs as they related to her other children, Kenny,

 Quentin, and Iris, who resided with their father.

¶5 Following a hearing on 22 August 2018, the trial court entered an order on 20

 September 2018 that adjudicated Jerry and Jimmy as neglected and dependent

 juveniles. Respondent-mother was allowed one hour of supervised visitation weekly.

 She was ordered to (1) sign releases to allow her service providers to share

 information with DSS and the guardian ad litem, (2) maintain monthly contact with

 DSS, (3) submit to random drug screens, (4) complete a global mental health

 assessment and comply with all recommendations, (5) complete parenting classes, (6)

 secure safe and stable housing, and (7) maintain legal income.

¶6 On 18 October 2018, DSS filed juvenile petitions alleging the neglect and

 dependency of Kenny, Quentin, and Iris. The petitions alleged respondent-mother

 had failed to address the needs identified in her In-Home Service Agreement, as the
 IN RE J.E.H., J.I.H., K.T.B., Q.D.B., I.T.B.

 2021-NCSC-96

 Opinion of the Court

 children were not being provided necessary school uniforms and supplies;

 respondent-mother lost her job and was still without housing; respondent-mother was

 not scheduling medical and dental appointments for the children; respondent-mother

 failed to attend her scheduled mental health sessions and parenting classes; and

 respondent-mother was left unsupervised with Kenny and Quentin in violation of the

 safety plan.

¶7 Following a hearing on 14 November 2018, the trial court entered an order on

 18 December 2018 that adjudicated Kenny, Quentin, and Iris as neglected and

 dependent juveniles. The court ordered that the children remain with their father in

 the home of their paternal grandmother. Respondent-mother was allowed visitation

 supervised by the children’s father or their paternal grandmother. She was required

 to comply with her case plan and attend parenting classes; attend medication

 appointments; transport Iris to school on time; and address the children’s well-being,

 needs, and recommended services.

¶8 Before the adjudication order was entered, on 5 December 2018, DSS filed

 additional juvenile petitions, again alleging that Kenny, Quentin, and Iris were

 neglected and dependent juveniles. The petitions alleged that during a home visit on

 25 October 2018, a social worker observed a gun lying on the couch in the living room

 where Kenny was playing. It was undetermined whether the gun was loaded, though

 the owner of the gun asserted it was not. The petitions also noted a report to DSS on
 IN RE J.E.H., J.I.H., K.T.B., Q.D.B., I.T.B.

 2021-NCSC-96

 Opinion of the Court

 3 December 2018 that indicated the children were often seen outside running across

 the road with no parental supervision, respondent-mother was seen outside yelling

 at and physically disciplining Iris, respondent-mother was at risk of being evicted

 from her apartment due to complaints to management, and it was believed

 respondent-mother was with the children unsupervised at the apartment. The

 petitions also alleged respondent-mother remained noncompliant with her case plan

 requirements, noting her failure to complete mental health treatment and parenting

 classes and to schedule medical visits for the children. Further, when a social worker

 arrived at the home to transport the family to a Child and Family Team Meeting, she

 was refused entry to the home, the family did not attend the meeting, and neither

 respondent-mother nor the children’s father contacted the social worker regarding

 the missed meeting. DSS sought and obtained nonsecure custody of the children on 5

 December 2018.

¶9 Following a hearing on 9 January 2019, the trial court entered an order on 21

 February 2019, again adjudicating Kenny, Quentin, and Iris as neglected and

 dependent juveniles. The court ordered custody of the children to remain with DSS.

 Respondent-mother was allowed a minimum of one hour of supervised visitation a

 week, and she was ordered to comply with her case plan, sign releases with her

 service providers, maintain monthly contact with DSS, and submit to random drug

 screens.
 IN RE J.E.H., J.I.H., K.T.B., Q.D.B., I.T.B.

 2021-NCSC-96

 Opinion of the Court

¶ 10 Following a permanency-planning hearing on 12 June 2019, the trial court

 entered an order on 11 July 2019 setting the primary permanent plan for Jerry,

 Jimmy, Kenny, Quentin, and Iris as adoption, with a secondary concurrent plan of

 guardianship with a relative or court-approved caretaker. On 6 August 2019, DSS

 filed a termination-of-parental-rights petition for all five children. The grounds

 alleged to terminate respondent-mother’s parental rights were (1) her neglect of each

 of the children, (2) her leaving Jerry and Jimmy in foster care or a placement outside

 the home for more than twelve months without a showing of reasonable progress to

 correct the conditions that led to their removal, (3) her failure to pay a reasonable

 portion of the cost of care for all five children in the preceding six months, and (4) her

 inability to provide proper care and supervision of all the children rendering them

 dependent juveniles. See N.C.G.S. § 7B-1111(a)(1)–(3), (6) (2019).

¶ 11 Following a hearing on 1 and 2 July 2020, the trial court entered an order on

 6 August 2020 adjudicating the existence of the grounds alleged in the termination

 petition. The court also concluded that it was in the children’s best interests to

 terminate respondent-mother’s parental rights and ordered that her rights in all five

 children be terminated.3 Respondent-mother appeals.

¶ 12 Respondent-mother’s counsel has filed a no-merit brief pursuant to Rule 3.1(e)

 3 The parental rights of the children’s fathers—known, putative, and unknown—were

 also terminated. They are not parties to this appeal.
 IN RE J.E.H., J.I.H., K.T.B., Q.D.B., I.T.B.

 2021-NCSC-96

 Opinion of the Court

 of the Rules of Appellate Procedure. In the brief, counsel identified certain issues

 relating to the adjudication and disposition portions of the termination proceeding

 that could arguably support an appeal, including whether the trial court properly

 found grounds existed for the termination of respondent-mother’s parental rights and

 whether the trial court abused its discretion by determining that termination of

 respondent-mother’s parental rights was in the children’s best interests, but

 explained why he believed the issues lacked merit. Counsel also advised respondent-

 mother of her right to file pro se written arguments on her own behalf and provided

 her with the documents necessary to do so. Respondent-mother, however, has not

 submitted any written arguments to this Court.

¶ 13 This Court independently reviews issues identified by counsel in a no-merit

 brief filed pursuant to Rule 3.1(e) to see if the issues have potential merit. In re

 L.E.M., 372 N.C. 396, 402 (2019). After careful review of the issues identified in the

 no-merit brief in this matter in light of the record and applicable law, we are satisfied

 that the 6 August 2020 order is supported by clear, cogent, and convincing evidence

 and is based on proper legal grounds. Accordingly, we affirm the trial court’s order

 terminating respondent-mother’s parental rights.

 AFFIRMED.